U.S. DISTRICT COURT – N.D. OF N.Y.

# FILED

## Nov 29 - 2021

John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**BOLLINGER INDUSTRIES INC.,**
*d/b/a* **ALLIANCE SPORTS GROUP, LP,**

                                             **Plaintiff,**

                    v.                                                **3:20-CV-95**
                                                                          **(FJS/ML)**

**WALTER R. TUCKER ENTERPRISES, LTD.,**
*d/b/a* **E-Z RED CO.; and MARK TUCKER,**

                                             **Defendants.**

**APPEARANCES**                                    **OF COUNSEL**

**BARCLAY DAMON LLP**                         **MITCHELL J. KATZ, ESQ.**
Barclay Damon Tower                              **JOHN JOSEPH PELLIGRA, ESQ.**
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for Plaintiff[1]

**HAYNES AND BOONE, LLP**                     **JONATHAN D. PRESSMENT, ESQ.**
2323 Victory Avenue                               **RONALD WAYNE BREAUX, ESQ.**
Suite 700                                               **BENJAMIN G. GOODMAN, ESQ.**
Dallas, Texas 75219
Attorneys for Defendants

**SCULLIN, Senior Judge**

---

[1] Carl Donald Liggio, Esq. is also listed as an attorney of record for Plaintiff.  However, the Court understands that Mr. Liggio is now deceased.  The Court thus directs the Clerk of the Court to terminate Mr. Liggio as Plaintiff's attorney.

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

Plaintiff Alliance Sports Group, LP (hereinafter referred to both as Plaintiff and "ASG")[2] alleges in its second, and most recent, amended complaint that Defendants committed fraud and fraudulent inducement against it in relation to a settlement agreement (the "Settlement Agreement") that the parties signed following a prior lawsuit.  *See generally* Dkt. No. 68, Second Amend. Compl.  In the prior lawsuit, commenced in January 2014, Defendant Walter Tucker Enterprises, Ltd., doing business as E-Z Red Co. ("Defendant E-Z Red") sued Plaintiff for patent infringement, contending that Plaintiff manufactured and sold certain flashlights for which Defendant E-Z Red held two patents.  *See id.* at ¶¶ 9-10.  The parties settled that lawsuit in April 2014, agreeing that Plaintiff would pay a licensing fee and share certain profits with Defendant E-Z Red so that it could continue to use the patented designs.  *See id.* at ¶¶ 15-23.

Plaintiff subsequently learned that a non-party company, referred to as Promier, was infringing on Defendant E-Z Red's patents.  *See id.* at ¶¶ 44-46.  Defendants sought to enforce the patents, and Promier allegedly informed them that it had "doubts about the patent[s'] validity" because Defendant E-Z Red had sold products covered by the patents more than one year prior to the patents' effective U.S. filing date and because Defendant E-Z Red's Chinese manufacturer had already filed design and utility patents for the flashlights in China.  *See id.* at ¶¶ 50, 54-69.  According to Plaintiff, those sales and the Chinese patents would have made the flashlights ineligible for patent protection in the United States, which Defendants allegedly

---

[2] The Court recognizes that the parties dispute whether ASG is the only plaintiff and if it was the intended plaintiff when this action was commenced.  The Court addresses this issue, *infra*, and concludes that ASG is, in fact, the only Plaintiff in this action.

knew but, nonetheless, filed the applications with the United States Patent and Trademark Office ("USPTO") and intentionally omitted those material facts.  *See id.* at ¶¶ 65-88, 94.

Plaintiff thus commenced this action in May 2017 alleging that Defendants knew that the patents were invalid when they induced Plaintiff into signing the Settlement Agreement that required it to pay a licensing fee to use the patents.  *See generally id.*  Pending before the Court is Defendants' motion to dismiss the second amended complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim and to allege fraud with particularity pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 69.

## II. DISCUSSION

### A.  Motion to dismiss standard

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contrs. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (Scullin, J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  Therefore, under this standard, a plaintiff must support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [its] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

    "'The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to the 12(b)(6) standard.'"  *Rehab. Support Servs. v. City of Albany*, No. 1:14CV0499 (LEK/RFT), 2015 U.S. Dist. LEXIS 86081, *6 (N.D.N.Y. July 2, 2015) (Kahn, J.) (quoting *Berkovitz v. Vill. of S. Blooming Grove*, No. 09 CIV 0291, 2010 U.S. Dist. LEXIS 93563, 2010 WL 3528884, at *5 (S.D.N.Y. Sept. 3, 2010) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003))).  "'To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue.'"  *Id.* at *12 (quoting *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted)).

## B. Whether Plaintiff lacks the capacity to sue

### 1. *Whether BII or ASG is the plaintiff in this matter*

    For purposes of deciding Defendants' motion to dismiss for lack of subject-matter jurisdiction, the Court must first determine whether the actual plaintiff bringing this action is ASG – which is identified as the plaintiff in the second amended complaint – or Bollinger Industries, Inc. ("BII"), which is identified as the plaintiff in the original and first amended complaints.  The parties couch this issue in different terms.  Defendants assert that Plaintiff

- 4 -

ASG, in its second amended complaint, is attempting to substitute itself for BII, which is a separate entity that does not have standing in this matter. *See* Dkt. No. 69-3, Defs' Memorandum in Support, at 16-17. Plaintiff ASG, to the contrary, contends that it has been the intended plaintiff since the start of this litigation, and BII was originally identified as the plaintiff due to a clerical error. *See* Dkt. No. 75, Pl's Memorandum in Opposition, at 9-13.

Both parties acknowledge that, in the original complaint, the plaintiff is listed as "Bollinger Industries Inc., d.b.a. Alliance Sports Group, LP." *See* Dkt. No. 1-10, Orig. Compl., at 2. It appears that ASG is one of BII's subsidiaries. ASG is a Texas limited partnership. *See* Dkt. No. 68 at ¶ 1. BII, a Delaware corporation, completely owns Bollinger Operating Corporation ("BOC") – a Nevada corporation – and Bollinger Holding Corporation ("BHC") – a Delaware corporation. *See* Dkt. No. 75-3, Ex. B, at 7. In turn, BOC is a 1% general partner of ASG and BHC is a 99% limited partner of ASG. *See id.* Notably, the original complaint indicates that "Plaintiff's general partner is [BII]." *See* Dkt. No. 1-10 at ¶ 2.

In the very first paragraph of the original complaint, it states, "Plaintiff Alliance Sports Group LP ('Plaintiff') files" the action. *See id.* at Preamble. In its factual allegations, the plaintiff points out that, on or about January 31, 2014, present-Defendant and then-plaintiff E-Z Red sued ASG for patent infringement; the plaintiff refers to that party, ASG, as itself, *i.e.*, as "Plaintiff." *See id.* at ¶ 10 (citing Dkt. No. 1-10, Ex. 1, at 23). The causes of action listed in the original complaint also stem from negotiations resulting from that prior lawsuit between E-Z Red and ASG. *See generally id.* at ¶¶ 11-61. The Court therefore finds that this evidence from the original complaint demonstrates that ASG was the intended plaintiff alleging fraud against Defendants and seeking redress based on ASG's prior Settlement Agreement with them.

The language in the second amended complaint further supports this conclusion.  For example, the two causes of action – fraud and fraudulent inducement – arise out of the prior Settlement Agreement between Defendants and ASG.  *See* Dkt. No. 68 at ¶¶ 96-112. Furthermore, the second amended complaint lists ASG as the named plaintiff in the caption. *See id.* at 1.  If listing BII as the plaintiff in the caption in the original complaint as "doing business as" ASG was, in fact, a clerical error, then Plaintiff argues that the second amended complaint – which is the most recent iteration of the complaint – remedied that error.  The caselaw supports this conclusion.  "[A]n amended complaint supersedes the original complaint and its exhibits and renders them of no legal effect."  *McGrier v. Capitol Cardiology*, No. 1:20-CV-1044 (LEK/DJS), 2021 U.S. Dist. LEXIS 150605, *5 (N.D.N.Y. Aug. 11, 2021) (Kahn, J.) (citing *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998); L.R. 15.1(a) (parentheticals omitted)).  Based on this rule, and the language within the second amended complaint, the Court further finds that the caption and language in the second amended complaint supersede prior complaints, thus meaning that Plaintiff ASG is the plaintiff in this case, not BII.

Finally, although Defendants have alleged BII's lack of standing, they have not alleged any confusion as to whether they would be potentially liable to ASG for the alleged fraud resulting from their Settlement Agreement with ASG; and, importantly, Defendants were fully able to respond to the first amended complaint.  *See generally* Dkt. No. 7, Answer.  Defendants also do not argue that they were not properly served with the original complaint.  *See id.* at 10-12.  Therefore, because there is no dispute that Defendants were properly served with a proper summons with notice and because they were aware – based on the language in the body of the original and amended complaints – that ASG was the plaintiff commencing this action for

fraud, the Court concludes that Defendants "had adequate notice of the entity which was seeking a judgment against them." *Planetarium Travel v. Whitehouse Travel Co.*, No. 97 Civ. 2186 (LMM), 1998 U.S. Dist. LEXIS 2128, *7 (S.D.N.Y. Feb. 26, 1998). As such, the Court denies Defendants' motion to dismiss on this ground.

### 2. *Whether Plaintiff assigned its right to sue to the Sellers*

Defendants next argue that, even if the Court determines that Plaintiff ASG initially filed this lawsuit, the Court must dismiss the case because ASG assigned its claims to certain "Sellers." *See* Dkt. No. 69-3 at 17. This argument stems from a transfer that occurred on August 1, 2017, when third party Luther King Capital Management ("LKCM") acquired approximately two-thirds of BII's ownership through a Stock Purchase Agreement ("SPA"). *See generally* Dkt. No. 75-2, SPA Excerpt. Prior to that transfer, Glenn D. Bollinger, Bobby D. Bollinger, Ron Bollinger, Glenn Bollinger Family Enterprises, Ltd., Bob Bollinger Family Enterprises, Ltd., Randle Bollinger, Richard Bollinger, Vicki Burnett, Carl and Mary Liggio, and the Maguire Joint Revocable Trust owned 96% of BII. *See id.* at 3. When LKCM acquired BII, the SPA identified those individuals, companies, and trusts as the "Sellers." *See id.* It is undisputed that, as part of the transfer, LKCM acquired most of ASG as one of BII's subsidiaries. *See* Dkt. No. 75 at 15-17; Dkt. No. 76, Defs' Reply, at 10. However, SPA Section 6.10 indicated that the Sellers would be responsible for ASG's rights and liabilities with respect to this lawsuit. Section 6.10 provides the following, in its entirety:

> **Section 6.10 EZ-Red Matter**[:] The Seller Representative (on behalf of the Sellers) shall have the exclusive right to, at Sellers' sole cost and expense, take all actions with respect to the matter currently pending in Tarrant County, Texas[3] in connection with the complaint filed by the Company and/or Subsidiary against

---

[3] Plaintiff initially filed this lawsuit in Tarrant County, Texas, *see* Dkt. No. 1-10; but Defendants removed the action to this Court in December 2019, *see* Dkt. No. 1.

> [Defendants] Walter R. Tucker Enterprises Ltd. and Mark Tucker, including to settle, dismiss and/or exercise any other right or fulfill any other obligation with respect thereto (and all amounts received in connection therewith shall be solely for Sellers' account); provided, however that (a) the Seller Representative shall not have the right or authority to cause the Company or any Subsidiary to take any action, enter into any agreement or commit to any arrangement with respect to such matter that would (i) result in or cause the Company or any Subsidiary to incur any material Liability or (ii) impose any obligation of any kind on the Company or any Subsidiary and (b) any Liability or amounts required to be paid as a result of claims, counterclaims and other similar Actions arising against the Company or any Subsidiary shall be borne by Sellers.

*See id.* at § 6.10.

Notably, the SPA is heavily redacted, and there is no definition of "Subsidiary" visible to the Court, nor is ASG ever mentioned by name. *See generally id.* However, considering that BII completely owned BHC and BOH, which completely owned ASG as general and limited partners, the Court finds that ASG constitutes a "Subsidiary" for purposes of this provision. The Court further concludes that the intentions of the parties as set forth in this provision are clear; and, thus, the Court need not look beyond the four corners of the Settlement Agreement.

Based on the plain language of Section 6.10, Plaintiff ASG obviously intended to grant the Sellers, as represented by Glenn D. Bollinger, the "exclusive right[s]," to "take all actions," with respect to this litigation and that the Sellers would be liable for the "sole cost and expense" of this litigation. *See id.* This, as Defendants argue, is a clear assignment to the Sellers. However, Defendants fail to recognize that the Sellers are identified in the preamble as BII's owners. Since the Sellers owned 96% of BII, and BII – through BOH and BHC – owned Plaintiff ASG, then it follows that Plaintiff merely assigned those rights to itself, or, in other words, it retained them. Therefore, the Court finds that Plaintiff ASG retained its rights and liabilities in this litigation; and, as such, the Court denies Defendant's motion to dismiss for lack of subject-matter jurisdiction on this basis.

### C.  Whether Plaintiff sufficiently alleged claims for fraud and fraudulent inducement

Defendants argue that Plaintiff "cannot prove fraud as a matter of law" for various reasons, including that the alleged misstatement – that the patents were valid – was an inactionable opinion, Plaintiff did not reasonably rely on it, Defendants did not owe Plaintiff a duty to disclose the information, and Plaintiff's complaint lacks particularized facts.  *See* Dkt. No. 69-3 at 19-30.  Plaintiff responds that its second amended complaint sufficiently pleads claims of fraud and fraudulent inducement and does so in a way that satisfies Rule 9(b)'s heightened pleading standard.  *See* Dkt. No. 75 at 19-29.

"The elements of fraudulent inducement are '"(1) a material misrepresentation or omission of fact; (1) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."'" *MVP Health Plan, Inc. v. Cotiviti, Inc.*, No. 1:18-CV-677 (FJS/CFH), 2019 U.S. Dist. LEXIS 190440, *7 (Nov. 1, 2019) (Scullin, J.) (quoting *Levine v. Landy*, 860 F. Supp. 2d 184, 193 (N.D.N.Y. 2012) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006))). The elements of actual fraud are essentially the same under New York law.  *See Southwestern Payroll Serv. v. Pioneer Bancorp, Inc.*, No. 1:19-CV-1349 (FJS/CFH), 2020 U.S. Dist. LEXIS 66906, *6-*7 (N.D.N.Y. Apr. 16, 2020) (Scullin, J.).  "As the New York Court of Appeals has cautioned, '[t]he elements of fraud are narrowly defined,' and '[n]ot every misrepresentation or omission rises to the level of fraud.'"  *Herzfeld v, JPMorgan Chase Bank, N.A.*, 354 F. App'x 488 (2d Cir. 2009) (summary order) (quoting *Gaidon*, 94 N.Y.2d at 349-50; *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004)).

Importantly, an omission or "concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose."  *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995) (citations and footnote omitted).  A

- 9 -

duty to disclose omitted facts "ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust." *Id.* (citations omitted).  "In the absence of a fiduciary relationship, a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, … ; or (2) 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.' …" *Id.* at 1484 (internal citations omitted).  "In either case, a disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact." *Id.* (citation omitted).

In addition to pleading each of the above-stated elements of fraud and a duty to disclose, a plaintiff must also plead the claim with the particularity Rule 9(b) of the Federal Rules of Civil Procedure requires.  Rule 9(b) specifies that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  This rule applies to ""'all averments of fraud,'"" including actual fraud and fraudulent inducement. *Haraden Motorcar Corp. v. Bonarrigo*, No. 1:19-cv-01079 (BKS/DJS), 2020 U.S. Dist. LEXIS 68666, *12 (N.D.N.Y. Apr. 20, 2020) (Sannes, J.) (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting Fed. R. Civ. P. 9(b))).

In its second amended complaint, Plaintiff generally alleges that, "[a]lthough [Defendant E-Z Red] represented in the Settlement Agreement that, 'to the best of its knowledge and belief, the [p]atents are valid and enforceable,'" in actuality, "its representation that it had the legal power to enforce the patents was an explicit representation that the [p]atents were valid and enforceable." *See* Dkt. No. 68 at ¶ 26.  Plaintiff asserts that it relied on those representations in

entering into the Settlement Agreement in 2014.  *See id.* at ¶ 27.  Plaintiff alleges that it later

discovered, from non-party Promier, that the patents at issue were invalid and void because

Defendant E-Z Red had sold products covered by the patents more than one year prior to the

patents' effective U.S. filing date.  *See id.* at ¶ 54.  Additionally, Plaintiff alleges that it learned

that Defendant E-Z Red's Chinese manufacturer held design and utility patents in China that had

been issued before Defendant E-Z Red even completed the U.S. patent applications.  *See id.* at

¶¶ 61-68.

According to Plaintiff, Theodore Breiner, who acted as Defendant E-Z Red's counsel

throughout this time period, admitted that Defendant E-Z Red had sold the patent protected

products more than one year prior to its patent applications and that Promier's claims

concerning invalidity were correct.  *See id.* at ¶¶ 4, 57.  He also learned of the Chinese patents

in March 2011, which was more than two years before the patents were issued in the United

States.  *See id.* at ¶ 64; *see also* Dkt. No. 69-2 at 10.  Plaintiff alleges that Breiner, a patent

attorney with thirty years of experience, knew that Defendants could not file for U.S. patents

because of both the prior sales and the Chinese patents and had a duty to disclose these material

facts to the USPTO.  *See* Dkt. No. 68 at ¶¶ 69-83.  Nonetheless, Plaintiff alleges that neither

Breiner nor Defendants advised the USPTO of those facts.  *See id.* at ¶ 89.  Plaintiff claims that,

had Defendants fulfilled their legal obligation to disclose the prior sales, the USPTO would

have barred Defendant E-Z Red from obtaining the patents at issue.  *See id.* at ¶ 92.  Based on

the foregoing, Plaintiff alleges that Defendant E-Z Red knew that the patents were invalid and

unenforceable and, thus, committed a fraud upon the USPTO and against all alleged patent

infringers – including Plaintiff.  *See id.* at ¶ 94.  Plaintiff additionally claims that it had no

reason to believe that the patents were invalid, and it relied on Defendant E-Z Red's explicit and implicit representations as to the patents' validity.  *See id.* at ¶ 95.

With respect to Plaintiff's first claim for fraudulent inducement in particular, Plaintiff alleges that Defendants knowingly "misrepresented the validity of the patent[s] and failed to disclose material facts that would have demonstrated their invalidity with the intention of inducing reliance and forbearance from further inquiry by [Plaintiff]."  *See id.* at ¶ 97. According to Plaintiff, it justifiably relied on Defendants' representations in entering into the Settlement Agreement, and Defendants' representations were made with "wanton dishonesty," and caused the Settlement Agreement to be void.  *See id.* at ¶¶ 98-99.  Plaintiff alleges that, as a result of Defendants' misrepresentations, it was proximately caused to suffer incidental damages, which it seeks to recover, in addition to punitive damages.  *See id.* at ¶¶ 102-103.

As to its second cause of action for fraud, Plaintiff contends that Defendants "promised orally and in writing" that it would receive a "valid and enforceable license," and those promises were "a material inducement to [Plaintiff] to enter into the Settlement Agreement." *See id.* at ¶¶ 105-106.  Nonetheless, Plaintiff alleges that Defendants "knew E-Z Red did not have a valid patent" at the time Plaintiff signed the Settlement Agreement.  *See id.* at ¶ 107. Plaintiff alleges that it relied on Defendants statements and representations regarding the patents' validity "by paying the license fee to E-Z-Red and incurring other expenses," and Defendants' intentional misrepresentations caused it other damages – including actual and punitive damages.  *See id.* at ¶¶ 109-112.

Based on the foregoing, the Court finds that Plaintiff adequately and specifically pled its causes of action for fraud and fraudulent inducement to satisfy the requirements of Rules 9(b) and 12(b)(6).  Specifically, Plaintiff alleged that the fraudulent misstatement was an omission in

that Defendants did not inform Plaintiff that the patents were invalid, which Defendants knew or should've known because they failed to inform the USPTO about the Chinese patents and their sales more than one year before they filed the U.S. application.  Plaintiff alleges that Defendants intended to defraud it by suing Plaintiff for patent infringement and then coming to a Settlement Agreement allowing Plaintiff to pay to use the patents, when, in fact, they were invalid.  Furthermore, Plaintiff asserts that it reasonably relied on the statement that Defendants believed the patents were valid during the negotiations, which was allegedly reasonable because the USPTO had approved the patents based on the information that it had.  Plaintiff also asserts injury because it allegedly paid hundreds of thousands of dollars in licensing fees to use the patented technology and paid some of its profits to Defendants.  The Court therefore finds that each of these allegations is sufficiently particular so as to put Defendants on notice of Plaintiff's claims and to give Defendants an opportunity to respond.

Finally, the parties appear to agree that they did not have a fiduciary relationship that would give rise to Defendants' duty to disclose their prior sales and other pertinent information. Notwithstanding this lack of a fiduciary relationship, the Court finds that Defendants owed Plaintiff a duty because Defendants made a partial or ambiguous statement that required additional disclosure to avoid misleading Plaintiff; and, in fact, Plaintiff signed the Settlement Agreement upon a mistaken assumption that the patents were valid, which was material to the agreement.  Defendants rely on the language in the Settlement Agreement that "to the best of [Defendant E-Z Red's] knowledge and belief, the Licensed Patents are valid and enforceable," as unequivocally showing that the patents could have been invalid, and Plaintiff erred in concluding otherwise.  *See* Dkt. No. 69-2 at § 5.1(iv).  The Court rejects this contention and finds that, based on Defendants' knowledge when they entered into the Settlement Agreement

with Plaintiff in 2014, Plaintiff has plausibly alleged that Defendants were aware that the patents were unenforceable and, at the very least, should have informed Plaintiff about the prior sales and Chinese patents to avoid misleading it.  Additionally, the Court concludes that Plaintiff acted upon the mistaken belief, based on the language in the Settlement Agreement, that the patents were valid when it agreed to pay to use them.  *See id.* at §§ 1.2, 1.3, 2.2, 5.1(iv). The Court therefore denies Defendants' motion to dismiss Plaintiff's complaint on these bases.

### D.  Whether Plaintiff is contractually estopped from bringing these claims

Defendants lastly contend that Plaintiff released these claims in the prior Settlement Agreement when it "'release[d] and absolutely discharge[d]' [Defendants] 'from any and all claims . . . of every kind and nature,' whether past, present or future, 'based upon or arising out of the Action' over the [p]atents."  *See* Dkt. No. 69-3 at 30 (quoting Dkt. No. 69-2, Ex. 1, Settlement Agreement, at § 2.1.1).  Plaintiff responds that, although settlements and claim resolution are worthy undertakings, it is claiming that it was fraudulently induced to enter into the Settlement Agreement, which is a ground for rescinding it.  *See* Dkt. No. 75 at 29.  Plaintiff therefore asserts that the Court should not value the Settlement Agreement over its "validly and sufficiently stated claim that the [S]ettlement [A]greement was procured by fraud[.]"  *See id.* at 30.

The parties' Settlement Agreement includes a provision in which both Plaintiff and Defendants release all prior, current, or future claims arising out of the patent infringement litigation.  *See* Dkt. No. 69-2 at § 2.1.1.  Specifically, the Settlement Agreement provides the following, in relevant part:

> <u>Mutual Release</u>.  Except with respect to the obligations created by or arising out of this [Settlement] Agreement, ASG and E-Z RED do hereby for themselves and their respective legal successors . . . release and absolutely discharge the other

> party from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, attorneys' fees, actions, and causes of action of every kind and nature whatever which either E-Z RED or ASG, now has, owns, or holds, or at any time previously ever had, owned, or held, or could, shall, or may hereafter have, own, or hold based upon or arising out of the Action existing at any time up to an including the Effective Date[.]

*Id.*

Based on the Court's conclusion above that Plaintiff plausibly stated a claim alleging that it was fraudulently induced into signing the Settlement Agreement, it follows that this release in the Settlement Agreement should be null and void. *See* Dkt. No. 75 at 29-30. Notably, recission of a release of claims is a remedy, not a claim, to which a plaintiff must be entitled. *See Kumaran v. Northland Energy Trading, LLC*, No. 19-cv-8345 (MKV-DCF), 2021 U.S. Dist. LEXIS 36633, *28-*29 (S.D.N.Y. Feb. 26, 2021). Thus, because the Court finds that Plaintiff has plausibly alleged that the Settlement Agreement was procured by fraud, the Court holds that Plaintiff is entitled to such remedy. *Compare id.* The Court therefore denies Defendants' motion to dismiss Plaintiff's complaint on this ground.

## III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff ASG's second amended complaint, *see* Dkt. No. 69, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court is directed to amend the caption in the docket so that Alliance Sports Group, LP is listed as the only plaintiff; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Lovric for all further pretrial matters.

**IT IS SO ORDERED.**

Dated:  November 29, 2021
       Syracuse, New York

                                    Frederick J. Scullin, Jr.
                                    Senior United States District Judge